Gershengorn. Good morning, Your Honors, and may it please the Court, Ian Gershengorn for Defendant PeopleConnect. The decision below should be reversed for two independent reasons. First, Plaintiff's Counsel had implied authority here to agree to arbitration on his client's behalf. It is settled law in Washington that where a principal gives its agent authority to perform an act, the principal also grants implied authority to carry out that act in the usual and customary way. And the usual background rule is that agents have authority to enter arbitration agreements on their principal's behalf. Those two rules control this case. Plaintiff gave her attorney authority to investigate her claims involving Classmates.com, and her lawyer agreed to arbitrate while visiting the website in the course of that very investigation. No one disputes that Plaintiff would be bound if she had agreed to the terms of service while investigating her own potential claims. The result is no different because she sent her lawyer to do the investigation for her. Second. I'm sorry. Go ahead. I'd rather answer your question. So on your first point, let's say hypothetically I were to agree with you that that was a possible outcome here depending on the facts. I don't see the facts here that establish that. And I understand you tried to do you asked for discovery. The district court didn't allow that. But I don't see facts in the record from which we could conclude by a preponderance of the evidence the exact scope of Attorney Riley's authority or whether there was an agency relationship when Riley agreed to the terms of service at that exact time, or if there was, how, if at all, it was limited. So even if we were to agree with you that the facts could support it, why shouldn't we remand this case for discovery and for the type of summary proceeding that the Washington Uniform Arbitration Act provides? So, Your Honor, I don't think we would have an objection if Your Honor did that, and we have done that in other cases as the 28 J letters have shown. But let me sort of try to get to Your Honor's objections, particularly with respect to agency. And let me start there. Questions, not objections. Questions, particularly with respect to agency. And let me start there. So we believe that no objection was made, but no concern was raised from the other side below, that there wasn't an agency relationship. This is something that's come up for the first time on appeal. So the question is, was there enough evidence already in the record to permit the inference that there was an agency relationship established? And we believe there was. And let me point, Your Honor, to four things. First, on January 7th, plaintiff's counsel created an account and agreed to the terms of service. On January 29th, he did that again when signing up for the three-month subscription. Just four weeks later, he filed a complaint on behalf of Ms. Napke. And when this issue was raised below, he argued both that the discussions he had about getting on the website were covered by attorney-client privilege and that he had done this for Rule 11, to satisfy his obligations under Rule 11, which, of course, are done because you have a client. We're not saying that that was irrefutable or unrebuttable, but given that they made no objection below to the existence of the agency relationship at the relevant time, you can't sit quiet while we put forward enough evidence to draw a reasonable inference that there was such a relationship and then come up on appeal and say, oh, gotcha, you didn't prove it. If you had, the district court might have done it differently. But your burden was to prove it. Absolutely, Your Honor. And they did say you haven't shown ratification, you haven't proved the elements, and the judge said, as I understand it, you don't get any discovery because it's already been provided to you. Right. And so we think that was clear error for the reasons, Your Honor. We think that was clear error by the district court. Was there any evidence that the defendants offered in the record, any actual admissible evidence beyond the declaration of Mr. Riley? I'm not aware of any, no, other than that he had taken the screenshots. So I just want to pursue this point for one more second because I do think what's critical here, given the lateness of the objection to the existence of the agency relationship, is was there enough evidence in the record from which there could be a reasonable inference drawn that there was an agency relationship at the relevant time? And we do think that there was. Yes, there was. I agree. But what was the scope of that agency? So my understanding is that Ms. Nappi hired Mr. Riley to file a lawsuit against People Connect because classmates was using her name and likeness. And doesn't, I mean, to me it seems that if she hired him to file a lawsuit, she wasn't intending that he would agree to arbitration. So, Your Honor. And give up her right to file a lawsuit. That would not be within the scope at all. Sure. And so let me address that directly, Your Honor. If what Your Honor means is that there was any, that what Ms. Nappi said was I would like a claim to be filed in court, that is not correct. There is not a shred of evidence to suggest that. What there was was an evidence that what Ms. Nappi wanted was to pursue claims against our client, and that could be done just as easily in arbitration as in litigation. And I think there are a couple of critical points here. First of all, all of the relief that Ms. Nappi is seeking and could get under Ohio law is available under the arbitration. So there's not a damages cap. There isn't anything like that. She's entitled to all the remedies under Ohio law. Those remedies are significant. Your client might prefer arbitration, but she didn't. I mean, she wanted a lawsuit. She wanted to. That's the thing, Your Honor, that is just not supported in the record. Had she said, had she said, I only want to file in court, we might have a different case. But there is, I just, there is no evidence that's true. And let me explain. I'm sorry. Counsel, could I interject a question, please? So this may be in the dumb question category, but my question is, how can a lawyer like Riley investigate a claim against a company like People Connect without going to their website? So, Your Honor, there are a couple of responses. He can, going to the website is the natural thing to do. We agree with that. And, in fact, that's what a person would do. But just to, if I could answer the implicit question behind, Your Honors, the reason why that's not a problem here is, among other things, there's an absolute right to opt out within the first 30 days. So any tension between the lawyer's obligation to investigate the claim and the existence of the arbitration agreement is completely not present here, where it's undisputed that there was an opt-out provision. So the lawyer could have investigated the claim and then opted out of the arbitration. And so the existence of sort of any sense that the lawyer should go on to investigate the claim isn't enough to undo the implied authority here. And, indeed, the idea that people, when investigating their claims in a website like ours, which has yearbooks of individuals, if Ms. Napke had gone on, she would have agreed in the very same way. And yet, if Your Honor were to say to me, well, is there any way she could go to see whether her name was being used with going on the website, I would say the exact same answer.  But that happens every single day. Like, those are the kinds of customary decisions that people make all the time. When we download apps, when we stay at hotels, we agree to arbitration. Counsel, I'm going to ask your friend this. But at page 21 of the red brief, it says, here Bursar and Fisher wasn't retained by Ms. Napke to enter into the PeopleConnect terms of service. It was retained to investigate and file a lawsuit. There's no record reference to that statement. Correct. Is there anything in the record that supports that statement, like any admissible evidence in the record which supports that statement? I'm not aware of any. I believe the straight answer is no. And I will ask your friend about it. In their op to your motion to dismiss, there is a statement, counsel had no discussion with plaintiff about creating an account on defendant's website. I didn't see that in Mr. Riley's declaration. Is that anywhere in the record? It is not, Your Honor, and it is not in the declaration. And this is exactly the kind of things that we would have spelled out in discovery and that other courts, including the ones we presented, do put forward and do allow us to pursue. And so I think these are the kinds of things that we would get on discovery. And I think it really illustrates, Your Honor's questions, really illustrate the evidentiary problems that arise when things are brought up for the first time on appeal. Now, I think it is worth highlighting here, of course, implicit, I think, in Your Honor's questions, that the district court made no sort of judgment at all that I think is defensible here, that discovery was somehow moot or had been taken care of. What she pointed to there was only half of the request, which was that we get the identity of the person who had taken the screenshots. And so there was an affidavit on that, and so that part of discovery was, quote, unquote, moot. But all of the stuff that goes to Your Honor's questions, I think, is exactly the kind of thing that discovery would flesh out. But if I could get back also to Judge Wardlaw's sort of underlying question, the idea that an attorney can't, in the course of an investigation, agree to arbitration just seems to us fundamentally at odds with what the Supreme Court has said about the nature of arbitration. It's a forum choice. Right? And those are the kinds of things that attorneys' forum decisions are the kinds of things that attorneys make all the time. And so the fact that when a client says to her attorney, please go investigate my claim so that I can pursue claims against People Connect, what she wants is money, recovery, damages. And if the lawyer chooses, you know, either sort of by intentionality or by inadvertence to arbitrate, that's, you know, that's part of the implied authority that the lawyer has to pursue and investigate the claim. So in this age of the Internet and websites and agreeing to terms of service that you can't never read, this is a significant case if we were to agree with you on this record. So, Your Honor, I guess I think that the so I agree, Your Honor, that agreeing to arbitration is ubiquitous. And I agree that all of us do it every day. But to me, that's what makes a lawyer could inadvertently bind his client to arbitration is significant. So, Your Honor, I guess let me just take a little bit of issue with inadvertent in this sense. I did, Your Honor. And if I could just retract. But if I could just explain what I mean by that. Right. This is a in order for this to be binding at all. Right. The lawyer has to the individual and the lawyer has to go through a lengthy process where the nature of the agreement is flagged. The terms of service are highlighted. This is set forth in the record. And you have to agree affirmatively and hit submit. So this is not a situation in which the other side. I'm just saying we had if that was going to be the rule, then lawyers should know about that. I mean, everybody should know about that if that's the rule. But, Your Honor, I think everybody does know about it. That's why I say I don't think it's disputed that if the if Miss Napke had just gone on the Web site herself directly, that she would have been bound. Right. And just she would have agreed to arbitration and she would be bound by that. And so I really do think the question here isn't so much are individuals bound by the terms of service they agree to. The question is when you're when your agent does that in the course of doing the very investigation you've asked your lawyer to do and then agrees. Is that sufficient? I'd like if I could, with the court's permission, reserve the final two minutes for rebuttal. All right. Thank you. So. Morning, honors. May it please the court. Roger Perlstadt for plaintiff. Napoli, Barbara Napke. There are two grounds on which to affirm the district court's opinion that I'd like to focus on today. And I think both have been raised in Mr. Grisham court's argument. First, defendant failed to establish that Miss Napke was even a client of Mr. Riley's when he agreed to the people connect terms of service. And without a relationship between them, Miss Napke cannot be bound by his agreement to the terms of service. And second, even if Miss Napke was a client of Mr. Riley's when he agreed to the terms of service, that's still not enough. Defendant's position is that any time a lawyer enters into any agreement while representing a client, even inadvertently, the client is bound to that agreement. But that's that's not the law. The lawyer must intend to bind the client. He must intend to act on the client's behalf. And he must have authority to bind the client. Well, you know, counsel, I'm not sure the latter is is true. I can imagine other circumstances like potentially ratification or agency where the lawyer could bind the client. But you would certainly agree, for example, if Mr. Riley and the client had had a discussion that said, you know that by my signing this you're bound to arbitrate. And the client said, yep, absolutely, go ahead, that your client would be bound. Of course. Yes, Your Honor. How do we know that didn't happen here? Point me to evidence. We don't know that that didn't happen. But there's no evidence in the record here. And the point is the point. Well, let me start. Let me back up. Sorry. Let me back up. In making these factual assertions, defendant is conflating two things. He's conflating the Mr. Riley's initial creation of his account where he did submit his name and e-mail address and click submit. And that was an agreement to the terms of service. And he's also conflating that with Mr. Riley's subsequent use of the website. And so all the record shows is that he agreed in January, he entered his e-mail, and he submitted. There's no evidence in the record that there was any relationship at that time with Ms. Napier. Well, let's say I agreed with you. They asked for discovery. There's no requirement under, for example, the Washington Uniform Arbitration Act or the normal process in FAA cases. You can file a motion to compel. And if you lose because there are disputed facts, then there's like a mini trial. I don't know what they call it in Washington State. But there are processes for a quick determination by the court of disputed issues as to the existence of an arbitration agreement. And that's essentially what they tried to do. And I don't really understand this, where the judge said the information about Napke's knowledge and acquiescence to the use of counsel's account has already been provided in the opposition, rendering the requested discovery a nullity. Why wouldn't they be entitled to discovery on the issue of the nature of the relationship? Was there an agency relationship? When did it occur if there was one? I think perhaps they would have been entitled to discovery had they asked before they filed their motion to compel arbitration. And I think that's exactly what this court said in Wilson v. Huge. And in that case, the court said defendants can't have it both ways. It can't roll the dice and move to compel arbitration without discovery and then say, oh, wait, if I'm going to lose, then I want discovery. And that's exactly what happened here. They chose to proceed without taking discovery. They have a burden. They know they have a burden. They choose to proceed with whatever facts or evidence they have or don't have. And they can't submit a motion to compel and say, oh, by the way, if this isn't enough, Your Honor, if I'm going to lose, then I want some discovery. You're saying that you believe that our circuit precedent says that in a motion under the FAA to seek discovery that a move-on has to make a final binding choice whether to seek discovery or file a motion to compel without seeking discovery. And if they think they win as a matter of law, they can't also say in the motion, we think we win as a matter of law, but if there are disputed issues, we want the procedures that we get under the law, that they're not allowed to do that. That is how I read Wilson v. Hughes, Your Honor. Yes, the defendants, they know they have a burden and they have to make a choice. And they are certainly free to ask the district court, hey, I am going to file this motion to compel. I need to know some more about the relationship between Ms. Nappi and Mr. Riley or I need to have some more information about who clicked what when. And I'd just like to take a little bit of discovery on that. But if they choose to proceed without that kind of discovery. That once they file their motion to compel arbitration, your view is our circuit precedent forever bars them from then seeking discovery as to whether there's an arbitration agreement no matter what. I can't say in all cases, but I think here when the ultimate missing element here are fact questions, I think Hughes is on all fours with this. Suppose this case proceeds and you enter into the stage of discovery, which is the next step if we affirm the district court. And all of a sudden you find out that or they find out they're deposing Ms. Nappi and they find out she did authorize arbitration. Wouldn't they have a right to go back and move to compel arbitration in the district court? That's hard to answer in the abstract. Perhaps. I think my response to that would be maybe there are waiver issues. I'd have to look at the circuit's case law on how far along in litigation you can go without waiving and maybe there is some fault of theirs for not taking discovery at the outset. But I think I'll just stand on it. I believe Wilson v. Hughes is on all fours with this with respect to the discovery. I think the factual point, the missing record here is a big problem for them. It's a big issue. I think it's not the only way you can affirm here. Do we have in the record evidence that supports your comment that she asked Riley to file a lawsuit, not to engage in arbitration? No. I agree with Mr. Gershengorn. The record says nothing about what the instruction is. I think we can gather that from the fact that he did file a lawsuit. But there's nothing in the record. This record is very, very weak, Your Honors, and I think that's the fault of defendants. So your position is so they didn't meet their burdens and done. That's one of them. I think you can do that. I certainly think you can do that, Your Honors. Counsel, why shouldn't we remand so there's a hearing on the scope of the agency? Or whether it even existed, because there's no evidence that he was actually acting as her attorney at that time. Right. I think that even if there were – even if he had been her – I'm sorry. Even if Ms. Napke had been Mr. Riley's client at the time that he agreed to the terms of service, that's still not enough, because defendants' position is that any contract entered into by a lawyer while representing a client binds that client. But that's not the law. It can't be the law. Lawyers enter into all sorts of agreements while representing clients. Counsel, I want to press back a little bit on the Wilson case. Is it correct that in the Wilson case the move-on's request for discovery was first raised in a footnote in its reply brief, as your friend argues in their reply brief? Is that a correct description of what happened in Wilson? Yes. And to be clear, discovery was raised in footnotes twice, but it was raised in their motion in a footnote and then in the reply brief in a footnote. And the district court said they already got it. You would agree that the district court's statement was not factually correct, right? I would rely more on the fact that they should have asked for discovery beforehand. But to answer Judge Gould's question about why not just remand for this determination, my point is that even if there had been a relationship, even if he had been representing Ms. Nabke, that's not enough here, because every time a lawyer enters into agreement, that doesn't bind the client. We cite in our briefs all sorts of agreements that lawyers enter into. We talk about agreements with expert witnesses, agreements for the provision of medical records, Westlaw. If I had appeared remotely today, I would have had to sign up with Zoom and agree to Zoom terms of service, and I would only be doing that to represent Ms. Nabke. That can't possibly bind Ms. Nabke to Zoom's terms of service. Does it make any difference whether Mr. Riley was acting intentionally and agreed to arbitration or whether he inadvertently pressed the button? I think that gets back to my initial point about the original signing up where he clicks submit, and that's good click wrap, that's valid click wrap, whether he is intending to or not intending to or known or unknown. That's objectively a manifestation of assent. That's good click wrap. While he was later searching the website, which was most certainly done on Ms. Nabke That is not necessarily an objective manifestation of assent. That was only browse wrap at the time he was later searching. And so I think it's not clear that that point, at that point, even that point if we acknowledge that he was representing Ms. Nabke while he was doing the searches, that doesn't bind him, and I think my best case for that is Stover v. Experian. In that case, a plaintiff had signed up for an Experian account. She clicked agree to terms of service through good click wrap. Then a day before filing the complaint, and it's not clear from the opinion, but I assume it's for reasons here to confirm facts or to take some screenshots, and the court said that wasn't a new assent to the terms. It wasn't a remanifestation of assent. She agreed once, quote, only once, plaintiff assented to terms. I want to follow up on Judge Wardlaw's question that there could be a difference that even if someone for themselves perhaps clicked inadvertently, there could be a difference between whether that would bind them and whether that would bind an agent, bind their principal, right? Yes. Yes, absolutely. I think the intent of the agent, the intent of the party actually entering into the agreement matters, and I think that's what the restatement talks about on the agents. And we don't know any of those things. And we don't know any of those things. But I think the context suggests otherwise. I think the context suggests that Mr. Riley was not acting on behalf of Ms. Nappi when he agreed. He used his personal Chris Riley, Florida, at Gmail account, not his Bursar and Fisher account. The context may or may not suggest it, but it was your choice not to address it in his declaration, right? You may have had good reasons for that. Maybe you didn't, but it was your choice to not address that in his declaration, and it was your choice not to put it in your client's declaration, correct? Yes, those are not in the declarations. I might be missing something obvious here, so just steer me to the answer. But if Riley was not representing Nappi when he clicked on the terms of service, then who was he representing? I mean, why was he looking at the website if not to represent Nappi? I'm going to sound like a broken record here, Your Honor, but it's not in the record. We don't know. I could offer a whole host of hypotheticals. Could he be like a lone Ronin searching the landscape? Yes, I mean, people use Classmates.com. Maybe he was looking up himself. Maybe he wanted to look up an old girlfriend. I don't know. We don't know. It's not in the record. So you're not missing something. We're all missing something. And you're saying we're all missing something, and it's their fault, so they lose. Sure, yes, I mean, yes. Yes, I think that's unless there's any further questions, I think that's a good place to stop. Thank you. All right, thank you, Counsel. Thank you, Your Honor. You have two minutes left. Thank you, Your Honor, and I'll be brief. First, the Wilson case is not relevant here and certainly doesn't bar us. That was a footnote in reply. Counsel agreed that our characterization of the opinion was correct, and I reread it. It is. Second, the evidence was in the possession of the person who had asked for the discovery, and the Ninth Circuit, the court, relied on that. And then, of course, in our case, the district court actually addressed the discovery question. So this was not a situation where the court found somehow it was waived. And then, finally, on the discovery, this is how this is proceeding, the three cases in our 20HA. They're in the Northern District. Obviously, they're not binding on this court. But what we're proposing here and the remand that the court has at least been asking about is the kind of thing that's happening in the real world in the district court all the time. I do think a couple of things. In terms of when Mr. Riley agreed to the terms of service, that's in the record excerpts at 161 and 163. Both when he initially signed up for the accounts and on January 29th when he upgraded. The reason why I think that's important is because if there's any lingering doubt about whether we had put in enough so that they could just stay silent and say we hadn't met our burden, we clearly have enough. The combination of the use of the website, the agreement to the terms twice, and then the filing of the complaint four weeks later while asserting both Rule 11 and attorney-client privilege as defenses is certainly sufficient. And the final point I'll just make, Your Honor, and this goes to the scope of any potential remand, the whole point of implicit authority is the attorney did not need express authority to agree to arbitration. He needed express authority to conduct the investigation. And then the question is, did he conduct the investigation in the customary and usual way? That's the key phrase in Washington law. And we think that going to the website in a suit involving a website and going on the website and agreeing to terms of service, which every one of us does every time we download an app, we stay at a hotel, that is exactly the kind of customary and usual thing that an attorney has implied authority to do when conducting and when fulfilling his express authority to investigate. So are all three of these lawsuits on similar factual basis as this case? Yeah. People Connect has a number of businesses, and so they're not all necessarily involving classmates.com, but the yes is the answer to Your Honor's question. They are right of publicity claims against websites that we operate. Okay. And so there's a proliferation of these things. Correct, Your Honor. And you're having to litigate individually whether or not there was an agency relationship when the button was clicked to gain access to your website by the attorney representing the client. Correct, Your Honor. All right. Thank you very much, Counsel. Thank you. NAFTA v. People Connect will be submitted, and this court will be in recess for the next 10 minutes.
judges: WARDLAW, GOULD, BENNETT